UNITED STATES DISTRICT COURT

+FOR THE WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | |
|---|---|
| **CALVIN HORTON** | **CIVIL ACTION NO. 15-2580-P** |
| **VERSUS** | **JUDGE FOOTE** |
| **JAMES ARONALD, ET AL.** | **MAGISTRATE JUDGE HORNSBY** |

REPORT AND RECOMMENDATION

In accordance with the standing order of this court, this matter was referred to the undersigned Magistrate Judge for review, report and recommendation.

STATEMENT OF CLAIM

Before the court is a civil rights complaint filed in forma pauperis by pro se plaintiff Calvin Horton ("Plaintiff"), pursuant to 42 U.S.C. § 1983. This complaint was received and filed in this court on October 22, 2015. Plaintiff is currently incarcerated at the Allen Correctional Center in Kinder, Louisiana. He claims his civil rights were violated by prison officials while incarcerated at the David Wade Correctional Center in Homer, Louisiana. He names James Aronald, Deputy Warden Rachel, L. Nail, Major Baird, Captain White, Captain Cole, Tonya Guillot, Physician Hearn, Physician Fuller, Nurse John Doe, Christopher Cantrell, James LeBlanc, the Louisiana Department of Public Safety and Corrections, and Jerry Goodwin as defendants.

Plaintiff claims David Wade Correctional Center security officials and medical personnel treated him unethically and uncivilly. He claims their conduct amounted to

torment and defamation of his character. He claims the Louisiana Department of Public Safety & Corrections was negligent because it disregarded his summons for intervention on his behalf.

Plaintiff claims he has two self-inflicted dislocated kneecaps. He claims his right kneecap has a torn lower quadriceps muscle. He claims he needs surgical intervention because of the severity of his condition. He claims the impact of the disruption of the right lower quadriceps muscle generated main, vital muscle and ligament detachments on the right side of his skeleton up to his skull. Plaintiff claims he is vulnerable to acute sounds which trigger major traumatic nerve reactions and muscle twitches. He claims he has no resistance to extreme acute sounds which makes him more susceptible to paralysis and/or being crippled.

Plaintiff claims he entered David Wade Correctional Center on March 16, 2015. He claims he had little or no communication at intake with the nurse regarding his vital medical information. He claims that on March 25, 201[5], he had his initial examination with Dr. Hearn. Plaintiff claims Dr. Hearn was reluctant to recommend surgical intervention even though she was aware of his ruptured lower right quadriceps muscle. He claims Dr. Hearn insisted that he had bad arthritis. He claims Dr. Hearn re-instated his prescriptions for muscle relaxers and pain medication. He claims he only took the prescribed medications for two months because the medications were only prescribed to appease him and had no effect against the traumatic effects caused by acute sounds. Plaintiff claims that in March of 2015, Defendants had actual knowledge of the substantial risk of serious harm caused by

extreme whistle vibration sounds to his body.

Plaintiff claims that on May 26, 2015, he was scheduled for an annual medical review at the infirmary. He claims Dr. Fuller examined him but was negligent in evaluating his immediate medical concerns.

Plaintiff claims that on August 24, 2015, the Louisiana Department of Corrections unethically influenced David Wade Correctional Center through Warden Jerry Goodwin to stage a "string" operation. He claims Sergeant Guillot falsely accused him of a horrific criminal act. Plaintiff claims he was sentenced to administrative segregation.

Plaintiff claims that on August 30, 2015, he requested medical attention for his left kneecap. He claims the severe offset of his lower and upper leg caused severe deterioration of the muscle tissue around the left front side and inner hip and pelvis. He claims he was never seen or advised and was left to endure the discomfort.

Plaintiff claims the Louisiana Department of Corrections failed to provide him with assistance after he made multiple requests for medical care. He claims he suffered excruciating agony because he was denied adequate medical treatment. He claims that from September of 2015 until June of 2016, he made numerous regular and emergency sick calls, but was only charged a medical fee. He admits nurse John Martin frequently visited his cell during these sick calls but complains that he only took his vital signs. He claims that on December 10, 2015, he made an emergency sick call but Nurse Martin did not visit his cell because of the way that the sick call was written.

Plaintiff admits that the David Wade Correctional Center medical staff routinely

screens inmates over the age of 50 every three months at a chronic clinical check-up. He claims that at every screening, his blood pressure was elevated and there was no medical intervention.

Plaintiff claims that on September 2, 2015, he was housed in a cell with inmate Sedderrius Coleman. He claims inmate G. Hunter conspired with inmate Coleman. Plaintiff claims that on September 21, 2015, he formally contacted Captain White regarding his situation. He claims that on September 25, 2015, he requested assistance from Captain White for an emergency cell change because of verbal and physical insults by inmate G. Hunter. Plaintiff claims he endured daily insults from inmate G. Hunter. He claims that on September 26, 2015, inmate Hunter threw a liquid substance into his cell while he was asleep. He claims prison officials refused to assist him. He claims Captain White replied with obscenities which demonstrated his bias, prejudice, and racism.

Plaintiff claims that prior to his encounter with Captain White, he contacted Warden Goodwin, Warden Arnold, Warden Rachel, Colonel Lonnie Nail, Major Baird, Captain Cole, Nurse John Martin, and the Louisiana Department of Corrections. He claims none of them responded.

Plaintiff claims he is at a greater risk among the prison population because he is defenseless because of his disability. He claims that on June 6, 2016, he was unjustifiably physically assaulted by inmate Brandon Welcome. He claims the attack caused further injury to his existing frail state by damaging his internal organs. He also claims the attack increased his risk of a heart attack, stroke, concussion, respiratory problems related to

emphysema, hemorrhoids, and constipation.

Accordingly, Plaintiff seeks monetary damages, criminal prosecution of Defendants, a medical examination, transfer from administrative segregation, and protection from retaliation.

## LAW AND ANALYSIS

**Medical Treatment**

Plaintiff claims he has received inadequate medical treatment. He claims he was denied medical treatment on August 30, 2015 for his left kneecap and on December 10, 2015. He filed this claim pursuant to 42 U.S.C. § 1983 of the Civil Rights Act which provides redress for persons "deprived of any rights, privileges or immunities" by a person acting under color of state law. The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged denial of or inadequate medical care is the Eighth Amendment prohibition against cruel and unusual punishment.

The lack of proper inmate medical care rises to the level of a constitutional deprivation under the Eighth Amendment of the United States Constitution only if the evidence shows that the prison officials showed "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976); See also Farmer v. Brennan, 511 U.S. 825, 835, 114 S. Ct. 1970, 1978 (1994). It is only deliberate indifference, "an unnecessary and wanton infliction of pain" or an act "repugnant to the conscience of mankind," that constitutes conduct proscribed by the Eighth Amendment. Estelle, 429 U.S. at 105-06, 97 S. Ct. at 292; See also Gregg v. Georgia, 428 U.S. 153, 96

S. Ct. 2909 (1976). Further, the plaintiff must establish that the defendants possessed a culpable state of mind. See Wilson v. Seiter, 501 U.S. 294, 297-302, 111 S. Ct. 2321, 2323-27 (1991); Farmer, 511 U.S. at 838-47, 114 S. Ct. at 1979-84. In addition, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs. See Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference to serious medical needs. To the contrary, the record demonstrates that Defendants were attentive to the medical needs of Plaintiff. It has been consistently held that an inmate who has been examined by medical personnel fails to set forth a valid showing of deliberate indifference to serious medical needs. Norton v. Dimazana, 122 F.2d 286, 292 (5th Cir. 1997); Callaway v. Smith County, 991 F. Supp. 801, 809 (E.D. Tex. 1998); Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

Plaintiff admits that Dr. Hearn examined him on March 25, 2015 which was shortly after his arrival at DWCC on March 16, 2015. He admits that he was prescribed muscle relaxers and pain medication for his conditions. Plaintiff admits that Dr. Fuller examined him on May 26, 2015. Plaintiff provides the court with at least 11 sick call forms which demonstrate that he was seen by the medical staff between April 30, 2015 and February 14, 2016. He admits nurse John Martin frequently visited his cell for these sick calls and took his vital signs. Plaintiff also admits that he was routinely screened by the medical staff

every three months for a chronic clinical check-up because he was over the age of 50. Plaintiff's complaint is devoid of factual allegations that would tend to show Defendants acted with a culpable state of mind or that their actions were "unnecessary and wanton.

Plaintiff disagrees with the treatment that Defendants provided him. He claims Dr. Hearn should have recommended surgery for his ruptured lower right quadriceps muscle. He disagrees with Dr. Hearn's diagnosis of arthritis. He also admits that he discontinued his prescribed muscle relaxers and pain medication after two months because he felt they were ineffective. He claims there was no medical intervention for his elevated blood pressure at his chronic clinical check-ups. As previously discussed, disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a claim for Eighth Amendment indifference to medical needs.

Plaintiff's allegations, if accepted as true, may amount to a state law claim for negligence, a tort. However, mere negligence, neglect, or medical malpractice does not amount to a denial of a constitutional right as these actions on the part of Defendants do not rise to the level of a constitutional tort. See Daniels v. Williams, 474 U.S. 327, 329-30, 106 S. Ct. 662, 664 (1986); Estelle, 429 U.S. at 106, 97 S. Ct. at 292; Lewis v. Woods, 848 F.2d 649, 651 (5th Cir. 1988). The fact that Plaintiff does not believe that his medical treatment was as good as it should have been is not a cognizable complaint under the Civil Rights Act. See Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). Prisoners are not constitutionally entitled to the best medical care that money can buy. See Mayweather v. Foti, 958 F.2d. 91 (5th Cir. 1992).

Accordingly, Plaintiff's medical treatment claims should be dismissed with prejudice as frivolous.

**False Disciplinary Report**

Plaintiff claims the Louisiana Department of Corrections influenced David Wade Correctional Center through Warden Jerry Goodwin to start a "string" operation. To the extent Plaintiff claims Sergeant Guillot filed false disciplinary reports against him and charged him with a horrific criminal act, Plaintiff has no right which protects him from being charged with a disciplinary offense. This is true regardless of the truth of the initial report. Freeman v. Rideout, 808 F.2d 949, 952 (2nd Cir. 1986); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984); Cardine v. Tucker, 23 F.3d 406 (Table), 1994 U.S. App. LEXIS 17566 (6th Cir. 1994). Accordingly, even if the actions of Sergeant Guillot resulted in false disciplinary action being taken against him, Plaintiff's claim against him is not cognizable because he has no constitutional protection from being wrongly charged with a disciplinary offense.

Accordingly, Plaintiff claims regarding false disciplinary reports should be dismissed with prejudice as frivolous.

**Failure to Protect**

Plaintiff claims he was housed in a cell with inmate Coleman. He claims inmate Hunter conspired with inmate Coleman. He claims inmate Hunter insulted him daily. He claims inmate Hunter threw a liquid substance into his cell while he was asleep. He claims

prison officials ignored his complaints. Plaintiff also claims he was physically assaulted by inmate Brandon Welcome.

The particular right protected under 42 U.S.C. § 1983 in matters which concern alleged inmate violence is the Eighth Amendment prohibition against cruel and unusual punishment. Under the Eighth Amendment, prison officials are required to provide humane conditions of confinement, ensuring that inmates receive adequate food, clothing, shelter and medical care, and must take reasonable measures to guarantee safety of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970 (1994).

"It is not, however, every injury suffered by a prisoner at the hands of another that translates into constitutional liability for prison officials." Farmer, 114 S.Ct. at 1977. Instead, to prevail on a claim based on a failure to protect, the inmate must show that he is incarcerated "under conditions posing a substantial risk of serious harm" and that the defendant prison officials were deliberately indifferent to the inmate's health and safety. Id. at 1977-78. The test for deliberate indifference is a subjective one. Thus, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of fact from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 1979.

After a thorough review of Plaintiff's complaint, read in a light most favorable to him, the court finds that the facts alleged do not support a finding of deliberate indifference.

Plaintiff does not allege that he was personally subject to an excessive risk of attack, nor does he allege prison officials were aware of any excessive risk posed him by the attacking inmate Welcome prior to the actual attack. He claims his cell mate inmate Coleman and inmate Hunter conspired together but makes no specific claims against inmate Coleman. He claims inmate Hunter verbally and physically insulted him but fails to make specific allegations other than inmate Hunter threw a liquid substance into his cell. Plaintiff's claims regarding inmate Coleman and Hunter do not support a finding of deliberate indifference to an excessive risk of attack. As such, Plaintiff has not shown that Defendants disregarded a risk to his safety by failing to take reasonable measures to abate it. Farmer, 114 S.Ct. 1970.

Accordingly, the actions on the part of the prison officials do not evidence an attitude of deliberate indifference.

**Criminal Prosecution**

Plaintiff seeks criminal prosecution of Defendants for their conduct and gross medical negligence of his condition. The court does not institute criminal prosecutions. Plaintiff does not have a constitutional right to have anyone criminally prosecuted. See U.S. v. Carter, 953 F.2d 1449, 1462 (5th Cir. 1992); Oliver v. Collins, 914 F.2d 56, 60 (5th Cir. 1990); Jefferies v. Allen, 2009 WL 536051 (W.D.La.).

Accordingly, Plaintiff's claims are frivolous because they lack an arguable basis in law and in fact, and they should be dismissed with prejudice as frivolous.

## CONCLUSION

Because Plaintiff filed this proceeding in forma pauperis ("IFP"), if this court finds Plaintiff's complaint to be frivolous, it may dismiss the complaint as such at any time, before or after service of process, and before or after answers have been filed. See 28 U.S.C. § 1915(e); Green v. McKaskle, 788 F.2d 1116, 1119 (5th Cir. 1986); Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). District courts are vested with extremely broad discretion in making a determination of whether an IFP proceeding is frivolous and may dismiss a claim as frivolous if the IFP complaint lacks an arguable basis either in law or in fact. See Hicks v. Garner, 69 F.3d 22 (5th Cir. 1995); Booker v. Koonce, 2 F.3d 114 (5th Cir. 1993); Neitzke v. Williams, 490 U.S. 319, 109 S.Ct. 1827 (1989).

For the reasons heretofore stated, it is recommended that Plaintiff's complaint be **DISMISSED WITH PREJUDICE** as frivolous under 28 U.S.C. § 1915(e).

## OBJECTIONS

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objection within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendations set forth above, within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking, on appeal, the proposed factual findings and legal conclusions that were accepted by the district court and that were not objected to by the aforementioned party. See Douglas v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

**THUS DONE AND SIGNED**, in chambers, in Shreveport, Louisiana, on this 29th day of November, 2017.

_____
Mark L. Hornsby
U.S. Magistrate Judge